■ SAWYER SAVINGS BANK, Respondent, v DAVID M. GUIDO et al., Appellants, et al., Defendants. [603 NYS2d 205] —Mahoney, J. Appeals (1) from a judgment of the Supreme Court (Torraca, J.), entered April 16, 1992 in Ulster County, which, *inter alia,* granted plaintiff's motion for summary judgment to foreclose a mortgage, and (2) from an order of said court entered November 16, 1992 which denied a motion by defendants David M. Guido, Andrea E. Guido and Highwoods Associates for reconsideration.

As a means of financing the construction of a small subdivision of single-family homes on their acreage in the Town of Woodstock, Ulster County, in 1988 defendants David M. Guido and Andrea E. Guido, individually and as partners in defendant Highwoods Associates (hereinafter collectively referred to as defendants), obtained a $250,000 loan from plaintiff. The loan was secured by a blanket mortgage on the proposed subdivision property, namely nine vacant lots and one improved lot upon which stood the Guidos' personal residence (hereinafter the blanket mortgage). As is typical in a blanket mortgage, the parties specified that plaintiff would release the individual, undeveloped lots from the lien of the mortgage upon receipt of a certain sum, here, $40,000 apiece, which sum was to be applied by plaintiff to offset the principal balance.

In 1989, defendants borrowed an additional $260,000 from plaintiff in connection with the construction of a home on lot No. 1, a subdivision lot within the lien of the blanket mortgage. This loan was secured by a second mortgage on lot No. 1 (hereinafter the second mortgage).

Ultimately, defendants defaulted on both loans and filed for

bankruptcy. In connection with lifting the automatic bankruptcy stay to permit plaintiff to commence foreclosure proceedings, the parties entered into a stipulation. The stipulation permitted plaintiff to foreclose on the *second* mortgage and further provided:

"[Plaintiff] and Debtor also agree that any foreclosure proceedings and any eventual foreclosure sale [on the second mortgage], shall be made subject to all obligations contained in [the blanket mortgage], including the payment of all outstanding, unpaid interest payments, late charges, principal paydown of Forty Thousand ($40,000) Dollars (for the release of the real property securing [the second mortgage]) * * *

"[Plaintiff] and Debtor agree that [plaintiff] shall have the option to be a bidder at any eventual foreclosure sale."

In accord with the stipulation, plaintiff foreclosed the second mortgage. At the foreclosure sale, plaintiff itself purchased the property, albeit subject to its prior blanket mortgage. Thereafter, it then executed unto itself a release, releasing lot No. 1 from the lien of the blanket mortgage.

Several months later, plaintiff commenced the instant action to foreclose the blanket mortgage and, following joinder of issue, moved for summary judgment. In its moving papers plaintiff asserted that only eight parcels remained subject to the mortgage—seven undeveloped lots and the lot containing the Guidos' personal residence. Excluded were lot No. 1 and another lot which had been improved, sold and released prior to the default. Also included was a detailed accounting of the amount due and owing on the note (i.e., $273,486.75) and a request that the property be sold in two pieces, the first piece being the undeveloped subdivision lots and the second being Guidos' personal residence. Defendants opposed, objecting not only to the proposed method of sale but to the amount alleged by plaintiff to be due and owing on the note. With regard to the latter argument, defendants asserted, in sum and substance, that pursuant to the bankruptcy stipulation release of lot No. 1 was to be accompanied by a $40,000 reduction of the outstanding principal balance on the blanket mortgage. Supreme Court concluded that defendants' arguments lacked merit as a matter of law and granted plaintiff's motion for a judgment of foreclosure in the amount of $273,486.75. Defendants appeal from this judgment and the subsequent order denying their motion for reargument.*

---

* Inasmuch as an order denying reargument is not appealable, defendants'

We affirm. Initially, we reject defendants' contention that due process requires they receive an actual hearing on the amounts due and owing under the blanket mortgage. As in any summary judgment motion, if the movant's papers are sufficient to warrant the relief requested as a matter of law and the opposing papers fail to raise any triable issue of fact, summary judgment is warranted, even as to the amount due and owing under a mortgage (cf., Marine Midland Bank v Scallen, 161 AD2d 103). The cases cited by defendants in support of their argument speak to the failure to accord a mortgagor notice of a foreclosure sale and, as such, are inapposite.

Moreover, upon exercise of our factual review power, we are satisfied that Supreme Court's award of summary judgment to plaintiff in the amount of $273,486.75 was proper as no triable issues of fact exist. While not argued by them on appeal, as presented below defendants' allegations relative to the amount due and owing under the mortgage rested upon an interpretation of the bankruptcy stipulation. Contrary to their arguments, however, a plain reading of that stipulation reveals that inclusion of the $40,000 release provision was not intended to alter defendants' obligations under the note or to compromise plaintiff's position. Rather, its inclusion was the direct result of the fact that under the stipulation the party who purchased lot No. 1 at the foreclosure sale would take subject to the prior blanket mortgage. That being the case, its obvious intent was to protect plaintiff and the new purchaser by clarifying and defining the new purchaser's rights and liabilities under the blanket mortgage. There is absolutely no indication that it ever was intended to apply in the event plaintiff itself took title.

As a final matter, we perceive no error in Supreme Court's conclusion that the greatest amount of money could be realized from the mortgaged premises by selling the undeveloped lots separate from the Guidos' personal residence (see generally, Bowmar, Mortgage Liens in New York, § 20.2, at 634-639). In support of its position, plaintiff submitted expert testimony which established that the seven undeveloped lots share a common infrastructure consisting of a partially completed roadway as well as partially completed utility hookups. That being the case, the expert opined that the property would have considerably less value per lot if sold separately to

appeal from this order must be dismissed (see, e.g., Levy v Blue Cross & Blue Shield, 162 AD2d 931, 932).

different purchasers because the purchasers would have to reach some agreement amongst themselves relative to completing the infrastructure before any home construction could begin. This, combined with other difficulties, such as who would take title to the partially completed roadway, led the expert to conclude that the property likely would be of interest only if purchased as one unit so the purchaser could take complete title to the subdivision and then take the steps needed to complete it and effect dedication of the roadway. In response, defendants produced no more than bare, conclusory allegations.

We have reviewed defendants' remaining contentions and find them to be without merit.

Mikoll, J. P., Mercure, Cardona and Casey, JJ., concur. Ordered that the appeal from the order is dismissed, without costs. Ordered that the judgment is affirmed, without costs.

